[No. 314. Decided January 11, 1892.]

### E. O. ROBINSON AND CARRIE ROBINSON, *Respondents*, v. S. MARINO, *Appellant.*

ANIMALS — VICIOUS DOGS — EVIDENCE — OWNER'S KNOWLEDGE — DAMAGES.

In an action to recover damages for injuries inflicted by a vicious dog, it is competent to ask a witness to tell, from his knowledge as a surgeon and general practitioner, what was the probable cause of the wounds inflicted on plaintiff.

Where the competency of a witness to testify as an expert was not raised in the lower court, it cannot be urged in the supreme court.

In an action for damages resulting from the bite of a dog, where one of the principal issues is, whether or not the dog is vicious, it is competent to show that prior to the occasion on which he attacked plaintiff he had bitten or attempted to bite other persons.

Where several witnesses in such an action testify that the dog had always been kept chained; that he would bark and jump at persons going near him, and endeavor to get loose; that on one occasion, when at large, he ran after and seized a woman's dress as she escaped through the gate; that he sprang upon plaintiff as she went to defendant's house, and bit and bruised her savagely, and that defendant had stated to a neighbor he was afraid the dog would get loose and bite the neighbor's child, there is sufficient testimony to go to the jury on the points of the ferocious disposition of the dog, and the owner's knowledge thereof.

Although it may not be shown that defendant had knowledge that the dog had ever attacked or bitten any person, yet if he knew that the disposition of the dog was such as to make it highly probable it would bite someone, if allowed at large, the defendant is liable for injuries inflicted by it.

Such damages as are the direct and obvious results of the injuries received by plaintiff, including physical pain and mental anguish, need not be specially alleged in order to recover compensation therefor.

Where plaintiff has been attacked by a savage dog, which inflicted a wound on her wrist, penetrating to the bone, and one in her side, three-quarters of an inch long and one-quarter of an inch in depth, and was rendered so nervous by the shock that she could scarcely sleep, and was in danger of going into convulsions whenever she heard the dog barking, a verdict for $800 damages cannot be said to be excessive.

*Appeal from Superior Court, King County.*

The facts in the case are stated in the opinion..

*White & Munday*, for appellant.
*T. H. Cann* and *Battle & Shipley*, for respondents.

The opinion of the court was delivered by

ANDERS, C. J.—This was an action brought by respondents, as husband and wife, to recover damages for injuries inflicted upon the plaintiff Carrie Robinson by a dog owned and kept by appellant.

On the trial, one Dr. Hilton, a witness for plaintiff, having testified that he treated two wounds on plaintiff, which he described, was asked this question:

" From your knowledge as a surgeon and general practitioner, can you tell what the probable cause of those wounds was?"

The question was objected to by defendant on the ground that the same was incompetent, and was not in the nature of expert testimony. The court overruled the objection, and exception was duly taken and allowed, and this ruling

of the court is assigned as error.  Appellant also insists
that the witness was not shown to be competent to testify
as an expert, but it is a sufficient answer to this objection
to state that the point was not raised in the court below,
and cannot be urged for the first time here.  We must,
therefore, assume that the witness was competent.  In-
deed, the competency of the witness as an expert is suffi-
ciently disclosed by the record, for it is there shown that
he had been a practicing physician and surgeon for twenty
years, and was still practicing as such at the time of the
trial.

Physicians and surgeons of experience are presumed to
be acquainted with all matters pertaining to their profes-
sion, and to be competent to testify concerning the same.
Rogers on Expert Testimony (2d ed.), pp. 43, 99.  And that
a medical expert may give an opinion as to the means by
which a particular wound was inflicted, is the prevailing
doctrine of the courts.  *Ib.* pp. 127, 128, and cases cited.
But the question here objected to called for no opinion
whatever except as to whether the witness had sufficient
knowledge to tell what probably caused the wounds de-
scribed.  He was not asked to state what caused them, or
even what probably caused them.  The question was pre-
liminary in its nature, and the objection was properly over-
ruled.  But even if it was error to permit the question to
be propounded to the witness, we think the judgment should
not be reversed, as the defendant could not have been
prejudiced thereby.  It was clearly shown by other com-
petent testimony in the case that the plaintiff Mrs. Robin-
son was bitten by defendant's dog, and that whatever
injuries she suffered resulted therefrom.  The admission
of incompetent testimony under such circumstances would
not justify us in reversing the judgment of the trial court.
*Brown Bros. & Co. v. Forest,* 1 Wash. T. 201.

Appellant also insists that it was error to permit the
witness Addie Simons to testify to particular instances of

the action of the dog in question, for the reason that no testimony had been offered to show that defendant had any knowledge of the same, and that it was not competent to prove the disposition of the dog by such testimony. We think the objection cannot be sustained. It was alleged in the complaint that the dog was of a ferocious and mischievous disposition, and accustomed to attack and bite mankind, and it is quite evident that that fact could not be more readily made manifest than by testimony descriptive of his actions. Whether or not the dog was vicious was one of the principal issues to be determined by the jury, and it was certainly competent to show that previously to the occasion on which he attacked Mrs. Robinson he had bitten, or attempted to bite, another person.

It is alleged in the brief of appellant that the evidence on behalf of the plaintiff failed to show that the dog was of a ferocious disposition, and failed to show that defendant had notice or knowledge of such disposition, and failed to show any negligence on the part of the defendant in suffering the dog to be at large, and it is therefore contended that defendant's motion for a non-suit should have been granted. But we are of the opinion that there was sufficient testimony to go to the jury upon each of the points made by counsel. Several witnesses for the plaintiff had testified that the dog had always been kept chained, which was strong evidence that he was ill-disposed, and that he would bark and jump at persons going near him while tied, and endeavor to get loose. The plaintiff Mrs. Robinson testified that she had lived on the opposite side of the street from the residence of the defendant for about three years, and that she had known the defendant's dog during that time, and that on the morning of November 2, 1890, she went to the house of defendant to get vegetables as she had been accustomed to do ; that when she got to the corner of the house the dog was lying with his nose on the

door step, which she thought was something unusual, and
sprang upon her and bit and bruised her badly, and bit
her arm to the bone; and Mrs. Simons had testified that
on one occasion, and the only time she ever saw the dog
at large, she saw him run after and seize hold of a woman's
dress as she ran out through the gate; and Mr. Peterson
had testified that the defendant stated to him the sum-
mer before that he was afraid that his dog would get loose
and bite his (Peterson's) child, because she was in the de-
fendant's garden so much.    With such testimony before
it, the court would not have been justified in granting
defendant's motion.

The owner of a domestic animal is not liable, in the ab-
sence of statutory provision, for any injury it may inflict
upon others, unless he has notice of its inclination to
commit such an injury.    But, according to the more
modern and more reasonable doctrine, it is not necessary
that he should have had actual positive notice.    If he has
notice that the disposition of the animal is such that it
would be likely to commit an injury similar to the one
complained of, it is sufficient.    It is not necessary that the
notice be of injury actually committed.    Thus, in case of
a dog known to be vicious and ferocious by its keeper, it
is unnecessary to show that he had previously bitten any
person.    The keeper of such a dog must see to it that he
is kept securely, or be responsible for all injury done by
him.    Cooley on Torts (2d ed.), 404, 405, star pp. 343–4;
2 Shearman and Redfield on Negligence (4th ed.), § 630;
*Flansburg v. Basin,* 3 Ill. App. 531; *Godeau v. Blood,* 52
Vt. 251; 36 Am. Rep. 751.    In the case last cited, RED-
FIELD, J., said:

"The duty which the law casts upon the keeper of a
malicious and dangerous domestic animal is but the enforce-
ment of a common moral duty, binding upon all men, that
a man should so keep and use his own property as not to
wrong and injure others.    The formula used in text-books
and in forms given for pleadings in such cases, 'accustomed

to bite,' does not mean that the keeper of a ferocious dog is exempt from all duty of restraint until the dog has effectually mangled or killed at least one person. But, as he is held to be a man of common vigilance and care, if he had good reason to believe, from his knowledge of the ferocious nature and propensity of the dog, that there was ground to apprehend that he would under some circumstances bite a person, then the duty of restraint attached, and to omit it was negligence."

.In this case it was not shown that the defendant had any knowledge that the dog had ever attacked or bitten any person before he attacked the plaintiff, but we think it was fairly shown that he knew, or should have known, that the disposition of the dog was such as to make it highly probable that he would bite some one in case he should ever break his fastening or be untied, and it was therefore the duty of the defendant to effectually restrain him. 2 Shearman and Redfield on Negligence, § 628. And the fact that he endeavored to do so, and that the dog broke loose or was untied by some other person, and without his consent or knowledge, will not, of itself, exempt him from liability for injury inflicted by the dog while so at large. *Partlow v. Haggarty*, 35 Ind. 178; *Wilkinson v. Parrott*, 32 Cal. 102; *Muller v. McKesson*, 73 N. Y. 195; 29 Am. Rep. 123. In *Muller v. McKesson*, 73 N. Y. 195, it was held that in an action against the owner of a ferocious dog for injuries inflicted by it, proof that the animal is of a savage and ferocious disposition is equivalent to express notice. And it has even been held that the knowledge of the wife is the knowledge of the husband in such cases. 2 Shearman and Redfield on Negligence, § 630, note.

The defendant testified in his own behalf that the reason he always kept the dog chained was to prevent him from following his team as he went around town selling vegetables. He also stated that he did not recollect ever telling Peterson he was afraid his dog would bite his child,

and did not think he so stated, and that he never was afraid the dog would bite anybody, and that the dog had never before bitten any one, and that no one had ever complained of the dog to him. Defendant's wife also testified that the dog never bit any person before, but neither of them contradicted the testimony of plaintiff's witnesses that he was "cross" and would jump at persons while chained and try to get loose. The court properly instructed the jury upon the law applicable to the case, and specially charged them that before plaintiffs could recover in the action they must be satisfied by a preponderance of the evidence that the defendant had knowledge that the dog was of a ferocious and mischievous disposition and accustomed to attack and bite mankind. The jury must have found, upon all the facts and circumstances in evidence, that defendant had such knowledge, and we cannot say that their verdict was unwarranted by the evidence, and therefore find no error in the refusal to grant a new trial.

Appellant further contends that plaintiffs were not entitled, upon the pleadings and evidence, to a verdict for more than the amount paid for medicines and medical attendance. It is claimed that there is no sufficient allegation of special damage in the complaint, and no proof whatever of the value of plaintiff's services, or of the amount of damage sustained by her; that whatever damages she sustained were not the necessary consequences of her injuries, were therefore special, and, consequently, not recoverable in this action, because not alleged. It is true, that there is no proof of the value of plaintiff's services. And it is therefore reasonable to presume that the jury awarded no damage on that account. But we think the learned counsel for appellant are in error in assuming that, under the allegations of the complaint, no damages can be recovered, except the amount shown to have been paid for medical services and medicine. The complaint alleges:

"That the said dog, while in the wrongful keeping of defendant, as aforesaid, and wrongfully and negligently suffered by defendant to go at large without being properly guarded, and confined as aforesaid, attacked and bit plaintiff Carrie Robinson on the arm and wrist, and on her side, thereby severely wounding and injuring her, said plaintiff, whereby she suffered, and still suffers, great pain of body and mind, and thereby was prevented, for the period of five days, from attending to her household duties, and was obliged to and did expend the sum of $50 for medicines and the services of a physician, in the endeavor to heal herself of said wounds and injuries; that, by reason of said wounds and injuries, plaintiffs have been damaged in the sum of $2,500."

It is a well settled principle of law that damages which are the natural and necessary result of an injury need not be specially pleaded. The plaintiff had a right, under the allegations of the complaint, to recover a fair compensation for all the direct and obvious results of the injuries received, including physical pain and mental anguish. Such damages are implied by law and need not be specially alleged. 3 Sedgwick on Damages (8th ed.), § 1270; 3 Sutherland on Damages, 715; *Curtis v. Rochester, etc., R. R. Co.,* 18 N. Y. 534; 75 Am. Dec. 258; *Tyson v. Booth,* 100 Mass. 258. And no doubt the jury in estimating the damages took into consideration, as they had a right to do, not only the physical and mental suffering of plaintiff, but, also, the effect produced upon her nervous system as shown by the evidence, and for which she was treated by her physician for some six weeks after the wounds upon her person had healed.

It is further contended by appellant that the verdict for eight hundred dollars is excessive. We cannot agree with counsel for appellant, that the injuries received by plaintiff were altogether of a trifling character. The wound upon her wrist, while only about the diameter of an "eight-penny" nail, penetrated to the bone. Her dress and corset were bitten through, and her side lacerated for the space

of three-quarters of an inch, and to the depth of a quarter of an inch. But her greatest injury resulted from the fright and mental terror, and the nervous shock produced by the unprovoked, sudden and unexpected attack upon her by this savage and infuriated beast. She says she was rendered so nervous that she could scarcely sleep for some time afterwards, and, according to the testimony of her husband, when she heard the dog barking, as she often did, she was so terrified that he was afraid she would go into convulsions. And there was testimony tending to show that she was still suffering from nervousness at the time of the trial. It is impossible to lay down any precise rule for measuring the damages in cases like the one at bar, and the amount of recovery must of necessity be left to the sound discretion and judgment of the jury, subject to be revised by the court when it clearly appears to be excessive. While the amount of the verdict may seem large, we cannot say that it is so disproportionate to the injury as to indicate that it was the result of passion or prejudice on the part of the jury, and we therefore see no reason for disturbing it.

The judment of the court below is affirmed.

DUNBAR, STILES and SCOTT, JJ., concur.

HOYT, J., dissents.