HUBERT O. BELL v. THE TERRITORY OF OKLAHOMA.

(Filed Feb. 11, 1899.)

1. APPEAL—*Probate Court to Supreme Court, When.* An appeal will lie from the probate court to the supreme court, in a bastardy proceeding, where only questions of law are involved in the appeal.

2. BASTARDY—*Prosecution of, Special Proceeding—Civil Procedure.* A prosecution in bastardy is a special proceeding, but in the nature of a civil case, and the Code of Civil Procedure is applicable to the trial of such causes, except where the procedure is provided by the act authorizing such proceedings.

3. SAME—*Evidence—Nonaccess of Husband.* The prosecutrix, when a. married woman, is incompetent to testify to nonaccess of the husband during the period within which the child must have been begotten, or to any facts or circumstances, direct or collateral, from which such nonaccess may be inferred.

4. EVIDENCE—*Presumption of Legitimacy.* The evidence to rebut the presumption of the legitimacy of the issue of a married woman, and to overcome such presumption, must be clear, distinct, satisfactory, and conclusive.

5. INSTRUCTION—*Bastardy Proceeding—Error.* In a bastardy proceeding prosecuted by a married woman, where she has been permitted to testify to facts from which nonaccess of the husband might be inferred, there being no other evidence on that question, it is error to refuse an instruction correctly embodying the law in reference to her competency to testify to such facts, and the character and amount of evidence necessary to overcome the presumption of legitimacy.

(Syllabus by the Court.)

*Error from the Probate Court of Payne County; before R. J. Basel, Probate Judge.*

*Robert A. Lowry,* for plaintiff in error.

*Harper S. Cunningham, Attorney General,* and *A. T. Neill,* for defendant in error.

Hubert O. Bell was convicted of bastardy, a⁻d appeals. Reversed.

Opinion of the court by

BURFORD, C. J.: This is a bastardy proceeding instituted by one Ida Dillman, in the probate court of Payne county, against Hubert O. Bell. The cause was tried to a jury, and the defendant found guilty, and a judgment was rendered against him for the sum of $725 for the support and maintenance of the child. From this judgment he appeals.

Defendant in error moves to dismiss the appeal upon the ground that there is no appeal authorized from probate courts to the supreme court in bastardy proceedings. The contention is that the chapter authorizing proceedings in bastardy was adopted by our first legislature in 1890, and contains this provision. Statutes 1890, ch. 41, sec. 10.:

"Appeals may be taken in cases brought under the provisions of this act in the same manner and with like effect as in other actions in the probate court.'

That the only provision for taking appeals from the probate court was that contained in the chapter on probate courts, and so far as applicable here, is as follows, ch. 19, art. 12, sec. 14.

"An appeal may be taken to the district court from a judgment, decree or order of the probate court. * * Eighth. From any other judgment, decree, or order of the probate court or of the judge thereof affecting a substantial right."

Evidently the position contended for by defendant in error would be controlling, were it not for the fact that the same legislature enacted the law extending the jurisdiction of probate courts and providing for the procedure therein. This act provides, ch. 19, art. 16, sec. 5:

"Appeals from the final judgment of said probate courts shall be allowed and taken to the supreme court of this Territory in the same manner as from the district court, and with like effect, when only questions of law are involved in the appeal. If questions of fact are to be retried in the appellate court, the appeals shall be taken to the district court of the county in manner and form as appeals are taken from judgments of justices of the peace."

These three several provisions took effect on the same day, in so far as the action of the legislature could control. The act extending the powers and jurisdiction of probate courts, required the ratification of congress before it could become operative, and such ratification took place by act of congress approved March 3, 1891. (26 Stat. 1026, sec. 17.)

Whatever the effect may have been prior to March 3, 1891, all the laws of the first legislature on the same subject-matter should, since the ratification by congress, be construed together. The legislature must have had in mind the act extending the jurisdiction of probate courts when it passed the act regulating bastardy proceedings. The latter act provides that, on demand of the defendant, the issue shall be tried by jury. In the probate act proper, there is no provision for obtaining a jury in the probate court, nor is that court authorized to try causes by jury; but in the act of extending the jurisdiction of the probate courts, it is provided, in section 2, that, in all cases commenced in the probate courts that are within the jurisdiction of justices' courts, the practice, proceedings, and pleadings, both before and after judgment, provided in the justices' procedure, shall be applicable; and in all cases when the sum exceeds the jurisdiction of justices of the peace, the proceeding and practice in the district courts shall be applicable, both before and after judgment.

Bastardy proceedings are special in character, and are governed by the act authorizing such proceedings, in so far as the same prescribes the proceedings and practice. But said actions are also in the nature of civil actions, and, in so far as not in conflict with the special act auth-

orizing such proceedings, the practice and proceedings in civil causes in the district court are applicable, and appeals may be taken in such causes in the same manner and to the same effect as appeals in civil cases from the probate courts. Giving these various statutes full effect, and construing them together, for the purpose and with the intent designed, the result is, in bastardy cases, if the party desires a trial *de novo*, his appeal should be to the district court, and should be taken in the manner and under the provisions prescribed in the chapter on probate procedure, but, if questions of law only are to be presented on appeal, then the appeal should be to the supreme court, and the appeal must be taken in the manner provided for appeals in civil causes from the district courts to the supreme court. The motion to dismiss for want of jurisdiction is overruled.

On the trial of the cause in the probate court, it appeared from the evidence that the prosecutrix was a married woman. The only evidence on the subject of her marriage and nonaccess of the husband was as follows: Cross-examination of prosecutrix:

"Question. Are you a married woman or a single lady? Answer. A married woman.

"Q. How long have you been married? A. Three years last June."

Redirect by counsel for Territory.

"Q. You are a married lady? A. Yes, sir.

"Q. Do you know where your husband is? A. No, sir.

"When was the last time you saw him? A. Two years last January.

"Q. Has he been with you since two years last January? A. No, sir."

The last three questions and answers embraced all the testimony given or submitted on the question of nonaccess of the husband. Each of the questions was objected to by counsel for Bell on the ground that it was incompetent, irrelevant, and immaterial. The objections were overruled, and counsel excepted. It is now contended that the rulings on the objections to this testimony was such error as should reverse the cause. Conceding that a married woman is not a competent witness to bastardize her own offspring, or to prove nonaccess of the husband, yet no objection was made to the competency of the witness; the objection went to the competency of the testimony. An objection to the competency of the evidence does not go to the competency of the witness. (*Denning v. Butcher*, [Iowa] 59 N. W. 69; *Robinson v. Marino*, [Wash.] 28 Pac. 752.) There was no error in the rulings of the court as to the competency of the evidence.

But the same question is saved in another way. At the proper time counsel for defendant requested the court to instruct the jury as follows:

"You are instructed that in a bastardy proceeding the most exclusive evidence of nonaccess on the part of the husband during the period within which the child might have been begotten is required, and that neither the husband nor wife is a competent witness to give evidence of nonaccess so as to bastardize a child, and that in this case, unless you find from the evidence, outside of the evidence of the prosecuting witness, Ida Dillman, conclusive evidence of nonaccess of the husband to her during the time within which, under the evidence in this case, the child might have been begotten, you should acquit the defendant."

This request was refused and exception saved. and no instruction was given embracing the subject-matter of this

request. This request fairly embraces the law as applicable to the issues and evidence in the case, and it was error to refuse it. It has been the well-settled rule, from the earliest times, as appears from the Roman, English, and American law writers, that neither husband nor wife will be allowed to give evidence tending to bastardize the offspring of the wife born or begotten during wedlock.

The supreme court of Wisconsin, in *Mink v. State*, 60 Wis. 583, 19 N. W. 445, properly stated the rule thus:

"The law is well settled that the wife, on the question of the legitimacy of her children, is incompetent to give evidence of the nonaccess of her husband during the time in which they must have been begotten. This rule is founded on the very highest grounds of public policy, decency and morality. The presumption of the law is in such a case that the husband had access to the wife, and this presumption must be overcome by the clearest evidence that it was impossible for him, by reason of impotency, or imbecility, or entire absence from the place where the wife was during such time, to have had access to the wife, or to be the father of the child. Testimony of the wife even tending to show such fact, or of any fact, from which nonaccess could be inferred, or of any collateral fact, connected with this main fact, is to be most scrupulously kept out of the case, and such nonaccess and illegitimacy must be clearly proved by other testimony." (*Haddock v. Railroad Co.*, 81 Am. Dec. 659; *Chamberlain v. People*, 23 N. Y. 80; *Cross v. Cross*, 3 Paige, 139.)

As to the weight or sufficiency of the evidence to rebut and overcome the presumption of legitimacy, the authorities are not in harmony. It was early held in England that this presumption could only be overcome by showing that the husband was beyond the seas during the

period when the child must have been begotten, but the learned English judges discovered the folly and injustice of this rule, and it has been modified from time to time, until it is now permissible, for the purpose of rebutting the presumption of legitimacy, to prove any fact or state of circumstances which renders it impossible that the husband could have been the father of the child. The rule in this country has never been as strict as in England, and is not now the same in all states.

In the celebrated case of *Patterson v. Gaines*, (decided by the supreme court of the United States) 6 How. 550, Mr. Justice Wayne said:

"Once the marriage is proved, nothing shall be allow d to impugn the legitimacy of the issue short of proof of facts showing it to be impossible that the husband can be the father."

Chief Justice Marshall, in the case of *Stegall v. Stegall* (tried in the circuit court for Virginia) 22 Fed. Cas. 1226, after an exhaustive review of all the cases at his command, stated that he was not satisfied with the rule that required the evidence to rebut the presumption of legitimacy to show the absolute impossibility of nonaccess; that he did not think it sufficient to show mere probability of nonaccess; hence, he adopted the rule that the evidence must be sufficient to establish the negation beyond a reasonable doubt.

The supreme court of Massachusetts, in *Phillips v. Allen*, 2, Allen, 453, adopted the rule that nonaccess must be proved beyond a reasonable doubt. Michigan has followed the same rule. (*Egbert v. Greenwalt*, 44 Mich. 245, 6 N. W. 654.) In *Wright v. Hicks*, 56 Am. Dec. 451, the Georgia court adopts the rule that a preponderance is

sufficient. But we think the Iowa supreme court has announced the better and safer rule, and one which does not go to the extreme, either of strictness or liberality. In the case of *State v. Romaine*, 58 Iowa, 46, 11 N. W. 721, that court said: "It appears to us that the true rule adduced from the authorities, as well as from principle, is that a child born in wedlock, whether begotten before or after marriage, is presumed to be the child of the husband, but that such presumption may be rebutted by strong, satisfactory and conclusive evidence that the husband did not have access to the mother of the child when it was begotten. * * The jury should have been instructed that the presumption of legitimacy was so strong that it could only be overcome by distinct, strong, satisfactory and conclusive evidence to the contrary." This case follows *Hargrove v. Hargrove*, 9 Beav. 552.

The instruction requested and refused in the case under consideration comes well within the rule enunciated by the Iowa court, and should have been given. For the error in refusing this instruction the cause is reversed, and a new trial ordered, and cause remanded to the probate court of Payne county with instructions to proceed in accordance with this opinion.

All of the Justices concurring.