## MILLER, Adm'r, v. NANNY.

No. 11567—Opinion Filed June 26, 1923.

**1. Witnesses—Competency — Transactions with Persons Since Deceased—Objection.**

The incompetency of the witness to testify in his own behalf concerning a transaction or conversation had with a deceased person, as against the administrator of the estate of such deceased person, under Comp. Stats. 1921, 588, must be raised in a trial court by an objection to the competency of the witness, and not merely by an objection to the competency of the evidence offered by the witness.

**2. Trusts—Constructive Trusts—Parol Evidence.**

A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satisfactory kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal and decisive.

**3. Same—Insufficiency cf Evidence.**

Record examined, and held, that the trial court did not err in sustaining the demurrer of the defendant to the evidence of the plaintiff.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from Superior Court, Muskogee County; Guy F. Nelson, Judge.

Action by Robt. W. Miller, administrator of the estate of John Thomas Neal, deceased, against H. L. Nanny, to declare a resulting trust. Judgment for defendant, and plaintiff brings error. Affirmed.

Robt. W. Miller, propria persona (John Watkins and O. E. Cramer, of counsel), for plaintiff in error.

J. B. Furry, for defendant in error.

Opinion by PINKHAM, C. This suit was commenced in the superior court of Muskogee county, Okla., by the plaintiff in error plaintiff below, against the defendant in error, H. L. Nanny, defendant below, to declare a resulting trust.

It appears that on November 2, 1918, one O. L. Lackey conveyed by warranty deed to the defendant H. L. Nanny certain land in Muskogee county described in plaintiff's petition, for a consideration of $450; subject to a certain mortgage held by the Conservative Loan Company of Shawnee, Okla.

Plaintiff claims that the consideration for the purchase price of this land was paid by J. T. Neal, deceased, of whose estate the plaintiff is administrator, and that notwithstanding the conveyance was made to the defendant, H. L. Nanny, by reason of the fact that the consideration was paid by J. T. Neal, deceased, a resulting trust exists, and that the defendant, H. L. Nanny, holds the title in trust for the estate of J. T. Neal, deceased.

The defendant, Nanny, in his answer to plaintiff's petition, admits the conveyance of the lands described in plaintiff's petition, by Lackey and wife on November 2, 1918, to him, and alleges that he merely became vested with the legal and equitable title to the same; that he is now, and ever since the execution and delivery of the deed, has been the owner of the legal title and of the equity of redemption in and to said land; defendant admits the appointment of the plaintiff as administrator of the estate of J. T. Neal, deceased, and denies all the other material allegations of plaintiff's petition, which answer was properly verified.

The cause was tried before the court and resulted in a judgment sustaining a demurrer to plaintiff's evidence. Motion for new trial was heard and overruled and exceptions taken, and the cause comes on regularly on appeal.

The first error assigned is that the court erred in sustaining the objection of the defendant to a question asked of the witness, T. S. Neal. Counsel for plaintiff asked the witness T. S. Neal the following question:

"Q. Did you ever have any conversation with Mr. (J. T.) Neal in relation to the purchase of the Lackey lands?"

This question was objected to as incompetent, irrelevant, and immaterial, and the objection was sustained by the court. The question asked did not refer to the purchase of the Lackey lands by the defendant, or to the particular transaction in controversy in the trial of the case; neither did the question point out the time or place of the conversation; nor did it state whether or not the parties to the transaction, Lackey or Neal, deceased, were present. Later, during the examination of this witness, counsel for plaintiff asked him if he had ever had any conversation with Mr. Neal relative to this transaction in the presence of defendant, to which the witness answered that he had not.

We do not think the question in the form in which it was asked was competent, and the court did not err in sustaining the objection.

The next assignment of error urged by plaintiff is that the court erred in overruling the objection of the plaintiff to the introduction of a check. The introduction of this check was made under the following circumstances: The plaintiff put the defendant, H. L. Nanny, on the witness stand as his witness, and undertook to obtain from him admissions to the effect that the deceased furnished the consideration for the purchase of the land in question. Plaintiff asked the witness a number of questions relative to his purchase of the land. The defendant testified as to when he purchased the land and how he paid for it; he testified that he was not indebted to the deceased. The defendant was asked by plaintiff's counsel if he was not at the time of the purchase indebted to the Baggs Mercantile Company in the sum of $253, and if he had not requested Neal to take over this claim and credit the Baggs Mercantile Company for payment, to which the witness answered that he did not think he ever made any such request, and that no such transaction ever took place. On cross-examination the defendant explained this transaction. He stated that in March, 1918, he loaned the deceased $250 and gave Neal a check for it; that when he bought this place from Lackey he asked Neal for this money and Neal gave him a check payable to himself for $200. This check, it appears, was signed by J. T. Neal, payable to the order of H. L. Nanny, and indorsed by Nanny to O. L. Lackey, the grantor in the conveyance. This check for $200 given by J. T. Neal to Nanny was offered by plaintiff in his examination of his first witness, O. L. Lackey, and was offered without objection on the part of the defendant.

The court did not err in overruling the objection of the plaintiff to the introduction of the check in evidence.

The next assignment of error is the action of the court in overruling plaintiff's objection to the following question asked of the witness H. L. Nanny on his cross-examination, to wit:

"Q. Did Mr. Neal, deceased, ever claim any interest in that land at all from you?"

No objection was made to the competency of Mr. Nanny as a witness. The only objection being that the testimony was incompetent, irrelevant, and immaterial.

In Williams v. Joins, 34 Okla. 733, 126 Pac. 1013, the first paragraph of the syllabus is as follows:

"The incompetency of the witness to testify in his own behalf concerning a trans-

action or conversation had with a deceased person, as against the heir of such deceased person, under the Comp. Laws 1909, sec. 5841, must be raised in the trial court by an objection to the competency of the witness, and not merely by an objection to the competency of the evidence offered by the witness."

In the body of the opinion it is said:

"And it is settled by previous decisions that, in order for one to avail himself of this point, he must object to the competency of the witness, and not merely to the competency of the testimony offered by the witness." Bell v. Territory of Oklahoma, 8 Okla. 75, 56 Pac. 853; Crebbin v. Jarvis, 64 Kan. 885, 67 Pac. 531.

"In Bell v. Territory of Oklahoma, 8 Okla. 80, 56 Pac. 854, it is said:

"'An objection to the competency of the evidence does not go to the competency of the witness. Denning w. Butcher, 91 Iowa, 425, 59 N. W. 69; Robinson v. Marino, 3 Wash. 434, 28 Pac. 752, 28 Am. St. Rep. 50'."

In the case of Hartzell v. Hartzell, 42 Okla. 390, 141 Pac. 772, it is said in the syllabus:

"An objection on the ground that the testimony is incompetent does not raise the question of the competency of the witness."

In case of Butler et al. v. Wilson, 54 Okla. 229, 103 Pac. 823, it is said in the first paragraph of the syllabus:

"An objection to the witness on the ground of competency must go to the competency of the witness, and is insufficient if the objection merely goes to the competency of the testimony of the witness."

Furthermore, the court's ruling was not error, even though the objection had been properly made for the reason the question was asked on cross-examination of the plaintiff's own witness with reference to a transaction in regard to which plaintiff examined this witness, and was, we think, proper cross-examination. In Niccolls v. Esterly, 16 Kan. 32, opinion by Mr. Justice Brewer, the court says:

"While a party may not under sec. 322 of the Civil Code, testify in his own behalf as to any transaction had personally by him with a deceased partner or joint contractor, in the absence of his surviving partner or joint contractor, when such surviving partner or joint contractor is an adverse party, yet if he is called by such adverse party to testify as to a part of any such transaction he may at his own instance, and in his own behalf, testify as to the whole of such transaction."

In the opinion in the above case, Mr. Justice Brewer, speaking for the court, says:

"Now, the testimony of the plaintiff in his own behalf was in reference to the same transactions on which he had testified at the instance of defendant and while if the defendant had so chose, none of this testimony would have been admitted, yet, having interrogated the plaintiff concerning these matters, and having obtained some of the facts concerning them, he could not thereafter object to the plaintiff's giving all the facts. By introducing part, he opens the door to all. Just as a party may not introduce his own statements in his own behalf, yet if his adversary draws out part of a conversation he may introduce the balance. The principle is general, that where a particular witness, or a certain kind of testimony, may be excluded, if the party who has the right to insist upon the exclusion waives that right, and himself calls the witness, or introduces the testimony, he cannot, after he has obtained what he desires, insist upon the exclusion, so far at least as to prevent a full development of the matters which he had partially presented."

And it was also competent for the further reason that it did not seek to bring out any transaction with the deceased, but was to the effect that there was no such transaction with the deceased, and this was proper under section 588, Comp. Stats. of Oklahoma, 1921.

In Murphy v. Hindman, 58 Kan. 184, 48 Pac. 850, in the first paragraph of the syllabus the court says:

"Party as witness, Code No. 322, may testify he had no transaction with, and made no conveyance to, deceased ancestor of adverse party. Where one of the parties to an action is an heir of a deceased person, and claims that the title to the land in controversy was transferred to his ancestor by the adverse party, such adverse party may testify that he had no transaction personally with the deceased, and that no transfer of title was ever made by him to the deceased."

This court in Sinclair, Adm'r, v. Stringer, 80 Okla. 218, 195 Pac. 771, in an action brought for personal services rendered the decedent, held that:

"Testimony by the plaintiff that she worked in the home of the deceased as a practical nurse, when the latter was at home, and could not have been ignorant of such services, and testimony as to the duration of such services, the reasonable value thereof, and that she had not been paid, is not testimony in respect to a transaction or communication had by her with a deceased person, within sec. 5049, Rev. Laws.

Plaintiff's fourth assignment alleges error in overruling the objection of plaintiff to the following question asked of the witness H. L. Nanny, defendant, on his cross-examination, towit:

"Q. Mr. Nanny was there ever any agreement between you and Mr. Neal, by which you were to buy this land for Mr. (Lackey) Neal?"

An examination of the record discloses that the only objection to this question was that it was leading. The question was asked of plaintiff's witness on cross-examination. The question does not suggest any answer. It simply asks whether or not there was any agreement between Neal and Nanny by which Nanny was to purchase this land for Neal, and the witness answered, "A. No! None whatever; never was intimated." There was no error in the court's ruling.

The other assignments of error may be considered together as they include but one question, that is, whether or not the court erred in sustaining the demurrer of the defendant to plaintiff's evidence. It must be borne in mind that plaintiff sues in this case to establish a resulting trust. The record discloses that one O. L. Lackey conveyed this land to the defendant H. L. Nanny by general warranty deed, and that Nanny took possession under it. Plaintiff's claim is that J. T. Neal, deceased, furnished the consideration to Nanny for the purchase of this land, and that by reason thereof the defendant holds the title for the estate of J. T. Neal, deceased.

In the case of Hayden et al. v. Dannenberg, 42 Okla. 776, 143 Pac. 859, the second paragraph of the syllabus is as follows:

"A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satisfactory and trustworthy kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal, and decisive.

"When the evidence is doubtful and not clear and satisfactory, or is capable of reasonable explanation on any theory other than that of the existence of an implied or resulting trust, such trust will not be held sufficiently established to entitle the beneficiary to a decree declaring and enforcing it." 26 R. C. L. sec. 77, page 1231.

In the case of Baughman v. Baughman, 283 Ill. 66, it is held:

"It is the settled rule of law in this state that parol evidence to establish a resulting

trust must be clear, strong, and unequivocal, and must establish the fact of the payment of the purchase money of the alleged beneficiary beyond doubt."

In the case of Colgrove v. Colgrove, 89 Ark. 182, it is said in the second paragraph of the syllabus:

"While resulting trusts may be proved by parol such evidence is received with great caution and the courts uniformly require that such evidence be full, clear, and convincing."

In the case of Tillar v. Henry, 75 Ark. 446, the court said:

"Constructive trusts may be established by parol, but parol evidence is received with great caution, and the courts uniformly require the evidence to establish such trust to be clear and satisfactory. Sometimes it is expressed that the 'evidence offered for this purpose must be of so positive a character as to leave no doubt of the fact,' and sometimes it is expressed as requiring the evidence' to be 'full, clear, and convincing,' and sometimes expressed as requiring to 'clearly established'."

The court, in the same case, further said:

"Title to real estate cannot be overturned by a bare preponderance of oral testimony seeking to establish a trust in opposition to written instruments. The conservatism of the courts has prevented the tenure of realty being based on such shifting sands."

Tested by the rule announced by our own courts and by the courts of other states, with respect to the character of evidence necessary to be produced by those seeking to establish a resulting trust, we think it cannot be said that the plaintiff proved his case "by clear, unequivocal and decisive evidence."

The testimony of the plaintiff's witnesses was to the effect that there never was any agreement by which the defendant was to buy this farm for Neal, the deceased.

The defendant positively testified that the deceased never paid any part of the consideration for this farm, that he bought the land involved himself, and that there never was any agreement or understanding between himself and J. T. Neal, deceased, to the contrary; that while the deceased gave him a check for $200, the check was a part payment of a prior debt which the deceased owed to the defendant.

In plaintiff's motion for a new trial, plaintiff sets forth an affidavit made by himself as to certain conversations between plaintiff and the witness O. L. Lackey with reference to a claim which Lackey had

presented to the plaintiff as administrator of the estate of J. T. Neal, deceased, based on a note signed by Neal for $272.91, in which statement of claim it was recited that the note was a part of the consideration paid by J. T. Neal, deceased, for the equity in seventy acres of land, and which land Neal caused to be conveyed to H. L. Nanny. The record discloses that plaintiff cross-examined the witness Lackey with reference to this claim in the trial of the case.

Plaintiff also in his motion for new trial makes affidavit as to a conversation he had with one Dr. Sosbee in which Dr. Sosbee informs plaintiff of a conversation Sosbee had with O. L. Lackey a short time before the trial in which it is claimed that Lackey said that the Neal estate should win because John T. Neal had paid him the entire equity in the land conveyed.

The effect of such testimony would be competent for one purpose only and that purpose would be to impeach plaintiff's witness Lackey.

An examination of the record discloses that a considerable amount of testimony was introduced in respect to the business transactions that had occurred between the deceased and the witness Lackey, much of which was not calculated to throw light on the issue involved, but whatever the business relations of these parties were, the evidence, we think, establishes the fact that the defendant purchased the land in question in good faith and without knowledge or notice of the alleged interest of deceased in this land, and we do not think the impeachment of the witness Lackey, assuming that that could be done, would necessarily have the affect of establishing a resulting trust.

The defendant testified positively that no money of the deceased went into the purchase of this land, but all the purchase money was paid by himself.

There was an examination of the witnesses in the court below, and that court had a better opportunity than we have to judge the credibility of the witnesses.

Upon an examination of the entire evidence in the case, we cannot say the judgment of the court sustaining the demurrer is so clearly against the evidence as to require a reversal.

The judgment, we think, should be affirmed.

By the Court: It is so ordered.