Wm. O. LUTON, Plaintiff in Error,

v.

Geo. F. MARTIN, R. W. Viersen, and D-X Sunray Oil Company, a corporation, Defendant in Error.

No. 38214.

Supreme Court of Oklahoma.

March 3, 1959.

Rehearing Denied March 31, 1959.

Doyle Watson, Drumright, Wheeler & Wheeler, Tulsa, for plaintiff in error.

Emerson R. Phillips, Pawnee, Smith, Ing-lish & Gray, Okmulgee, for defendants in error.

PER CURIAM.

In the latter part of 1953, a Mr. C. H. Frost and the defendant in error, George F. Martin, entered into an agreement whereby Frost, with financial assistance from Martin, was to acquire a block of oil and gas leases in eastern Pawnee County which they hoped so sell at a profit. To complete this block of leases it was con-cluded, in the early part of 1954, that the south eighty acres of the SW¼ of Sec. 8, Township 20 North, Range 7 East, Pawnee County, owned by a Mr. and Mrs. Nix, should be included. Investigation disclosed that plaintiff in error owned a ninety-day lease on all of the quarter section described, the primary term of which was to expire April 2, 1954. Negotiations between Frost and plaintiff in error concerning Mr. Luton's lease on this property culminated in a payment to Luton of $320 and the as-signment to him of the N½ of a new lease Frost acquired from the property owners for a primary term of one year from April 2, 1954. There was no actual assignment of his lease by Luton to Frost. The new lease contained a provision in which the lessee agreed "to drill a well * * * dur-ing the term of this lease." During 1954 Frost became interested in another busi-ness and sold his interest in this block of leases to the other defendant in error, R. W. Viersen. The defendants in error did not drill on the Nix premises during the term of their lease but did drill a producing well shortly before the Nix lease expired on other property which was an offset to the south of the east eighty acres of the Nix property. Just a few weeks prior to the expiration of the lease to the Nix property, to which plaintiff in error had

been assigned the north half, defendants in error, with knowledge that oil was proved in the offset to the south, acquired a lease to the east eighty acres for a period of one year from the expiration of the existing lease. Shortly after the expiration of the plaintiff's lease they also acquired another lease to the remainder of the quarter section. Producing wells were subsequently drilled by them on the east half of the quarter section, including the northeast quarter. The foregoing facts are substantially undisputed.

Considerable dispute exists in the testimony concerning the agreement entered into between Frost and the plaintiff in error. Frost initially contacted plaintiff in error by telephone. Their agreement was consummated in Martin's office later. Luton testified that Frost agreed in the telephone conversation to pay him $2 per acre for his lease and to assign to him the north half of a new lease they agreed would be secured from the property owners. He also testified that he was "on a deal" to drill the leased premises under his ninety-day lease at the time Frost contacted him, and that he would not agree to the deal Frost proposed until Frost promised to drill a well on the premises.

Mr. Frost testified by deposition introduced by plaintiff in error in his case in chief. Frost testified that his telephone offer was to pay Luton $2 per acre for the remainder of the ninety-day lease and assign to him the north half of the new lease he intended to secure from Mr. and Mrs. Nix; that Luton contacted him a few days later in Martin's office, on March 12, 1954, and accepted his offer; that he did not promise Luton that he would drill a well, or cause one to be drilled, on these premises but merely had discussed with him the fact that a well drilled on the south half of the lease would extend the north half also; that he had negotiated this agreement with Luton because he had never "top-leased anybody, and I didn't intend to top-lease" Mr. Luton.

It is not clear from either witness whether the new lease from the property owners had been executed at the time the parties' contract was consummated by the payment to Luton or whether it was secured from the owners later. Although that lease bears date of March 5, 1954, the acknowledgment thereon is dated March 15, 1954. It does appear from cross-examination that the testimony of the plaintiff in error at the trial concerning his negotiations with Frost did not coincide in several material respects with statements made by him in a deposition taken prior to trial.

The trial court rendered judgment for the defendants finding specifically "* * that the plaintiff has failed to meet the required burden of proof herein."

The basis of plaintiff in error's appeal is his contention that the evidence introduced was sufficient to establish a constructive trust in the oil lease owned by the defendants in error, and that the trial court erred in denying his claim.

■ The purpose of constructive trusts is to deny to those who insist thereon the fruits of conduct which may be classified as "fraudulent or unfair and unconscionable." See 89 C.J.S. Trusts § 139 et seq., p. 1015. In Powell v. Chastain, Okl., 318 P.2d 859, 862 we said:

"Constructive trusts are those raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such relation, and often directly contrary to the intention of the one holding the legal title. All instances of constructive trusts may be referred to what equity denominates 'fraud', either actual or constructive, including omissions in violation of fiduciary obligations. If one obtains the legal title to property by fraud or by violation of confidence or fiduciary relationship, or in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by imposing a constructive trust upon the property in favor of the one who is

in good conscience entitled to it, and who is considered in equity as the beneficial owner."

 But because these trusts are permitted to be established by parol as an exception to the statute of frauds, the courts are cautious in imposing this burden on legal title and "have always been reluctant to decree such a trust except on clear, unequivocal and decisive evidence." Jones v. Jones, 194 Okl. 228, 148 P.2d 989, 991. Measured by the requisite standard, we do not believe that the court's judgment in this action is against the clear weight of the evidence. Forshee v. Anderson, Okl., 332 P.2d 688. And this is especially true in view of the presentation by plaintiff in error, in his case in chief, of the strongest evidence negating the requisite relationship between these parties upon which such a trust could be founded.

It is true that the testimony of Mr. Luton would support the establishment of a constructive trust on these leases, for the intentional acquisition by the defendants in error of these new leases, rather than drill under the existing lease, in view of knowledge of the potential and of an obligation by them to Mr. Luton which could have been performed, would be most unjust. But the testimony of Mr. Frost, who at the time no longer had any interest in these leases, not only fails to support the requisite conclusions but positively negates them. According to him there was no agreement with the plaintiff in error to drill the lease. And it also appears from Frost's testimony that Mr. Luton was unaware of the drilling clause in Frost's lease with the landowners at the time they apparently agreed to the terms of their transaction. Be that as it may, unless there was an agreement between the two of them on this point, plaintiff in error can raise no duty to him which would justify the creation of a trust on the second lease. From Frost's testimony it would appear that he and Luton were negotiating at arm's length, from which no relationship could arise between them other than as created by their agreement, and the assignment to plaintiff in error of a part of the lease secured by Frost merely conveyed to Mr. Luton the identical responsibilities to the landowner as to his portion of the lease as those which remained with Frost.

The obligation of Frost to the property owner created no corresponding duty to Mr. Luton in the absence of an agreement. If this were the true situation, and the trial court's conclusion indicated that it was not convinced of a contrary one, no fiduciary relationship or inequitable result exists, without regard to the problem of a relationship between the plaintiff in error and these defendants in error through Frost.

Judgment is affirmed.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was written by the Commission, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.