**W. F. SNAKARD, Plaintiff in Error,**

v.

**H. C. McLAUGHLIN, A. A. Thornton, Laffoon Oil Company, an Oklahoma Corporation, P. S. Taylor and John D. Frizzell, Defendants in Error.**

No. 38404.

Supreme Court of Oklahoma.

March 22, 1960.

Rehearing Denied May 10, 1960.

P. D. Erwin, Chandler, Looney, Watts, Looney & Nichols, By Anna B. Otter and Clyde J. Watts, Oklahoma City, for plaintiff in error.

Ted Foster, Hopps & Erdberg, Oklahoma City, Wm. A. Vassar, Chandler, for defendants in error.

HALLEY, Justice.

The case was tried to the court and resulted in a judgment for the defendants so far as the establishment and enforcement of a constructive trust is concerned, but title of the plaintiff was quieted as to the SW¼ of the NE¼ of Section 2–T14N–R2E, Lincoln County, Oklahoma, covered by oil and gas lease in favor of plaintiff.

Plaintiff alleged that he employed McLaughlin in December, 1955, to make a study of the North Wellston Field for the principal purpose of obtaining and developing leases in that field, and furnished to McLaughlin, a geologist, certain confidential information, which the geologist was bound not to use for himself or with third parties and not to compete with Snakard in obtaining and developing leases in that field; but that McLaughlin had used such information and disclosed it to other defendants who had obtained leases in that field and should account to plaintiff therefor, and prayed that defendants be held to be constructive trustees for plaintiff.

The principal witnesses were the plaintiff, Snakard, and the defendant, McLaughlin, who was called to testify by the plaintiff. Plaintiff testified that he employed McLaughlin to make a geological study of the North Wellston Field for the purpose of using him as an expert witness for plaintiff in a civil action pending against Frankfort Oil Company in a Federal District Court case; that incidental to this study in preparing himself to testify for plaintiff as an expert witness, the geologist discovered a promising area for development near the area involved in the Federal case, and suggested to Snakard that he try to acquire a lease thereon; that he and McLaughlin

went to Chandler to check the records; that McLaughlin voluntarily offered to help Snakard obtain a lease from Sohio on its interest in the other land; that he furnished McLaughlin certain confidential information to prepare him to act as an expert witness, and that McLaughlin used this information later in acquiring leases in the North Wellston Field, and also disclosed such information to others who acted with McLaughlin in acquiring and developing such leases, while plaintiff was undertaking to obtain and develop leases in that field.

The defendant McLaughlin was called by Snakard to testify. He stated that he was employed by Snakard to be an expert witness in his case with Frankfort Oil Company, and he requested and was given an opportunity to familiarize himself with the subject matter of his testimony, and in the course of his and Snakard's studies, he discovered possibilities of productivity in certain other areas of the field and informed Snakard of such facts; that they then agreed to jointly secure leases, especially the Sohio lease for the purpose of developing them; they went to Chandler to check records and to Sohio to try to get that lease, which was considered a key lease; that when it developed that his testimony was not needed in the Frankfort case, Snakard paid him for his time in preparing to be an expert witness in that case, but for only part of what he had agreed to pay had he testified; that he obtained the Sohio lease through his sole efforts, but Snakard then refused to continue on a 50-50 basis because Snakard believed it was not feasible, and told McLaughlin to "count me out", and "go ahead and see what you can do with it"; that he did so with the aid of defendant Thornton, but later he and Thornton offered to re-admit Snakard but he again refused, but he, Snakard, was informed of McLaughlin's and Thornton's activities, but made no demand upon either of them and made no claim upon them until the venture appeared to have become more certain through their efforts.

The testimony of all other witnesses produced by Snakard and two by the defendants had little bearing upon issues made by Snakard's pleading or his evidence except the issue of laches, plead by all of the defendants.

The court made specific findings of fact and conclusions of law. The findings of fact in substance are:

(a) McLaughlin's employment by Snakard was for the sole purpose of preparing him to act as an expert witness in another case.

(b) The study made by McLaughlin did not include the lands and interests in controversy in this case.

(c) The information furnished to McLaughlin by Snakard was not secret or confidential but was open and available to the general public.

(d) The defendants were actively and openly engaged in, and spent large sums of money in acquiring the leases during a period of about seven months with the full knowledge of Snakard, who took no action with reference thereto and made no demand on the defendants in that regard.

(e) Thornton had actual notice that the mineral deed he purchased was encumbered by an unrecorded oil and gas lease to Snakard. (The adversary claims of Thornton and Snakard in this connection are not before this Court and are not in issue here.)

The conclusions of law are in substance:

(a) No constructive trust arose from the facts in this case.

(b) No confidential relationship existed by reason of Snakard's employment of McLaughlin.

(c) No confidential relationship existed between Snakard and any of the defendants.

(d) There was no abuse of any confidential relationship between McLaughlin and Snakard.

(e) Snakard was guilty of laches.

(f) Thornton was not an innocent purchaser of the Williams minerals and took said minerals subject to Snakard's unrecorded oil and gas lease. (Not an issue here.)

Each of the defendants plead a general denial, demurrer and each also plead laches. The plea of laches was based upon the claim that the plaintiff withheld his action until the development undertaken by defendants appeared to be reasonably certain of profitable production.

Plaintiff submits as the first of its five propositions that the defendants attempted to prove a partnership agreement entered into after the original employment agreement was ended and to prove the affirmative defense of confession and avoidance, and that the evidence was inadmissible for the purposes of this appeal.

■ In the recent case of Luton v. Martin, Okl., 337 P.2d 442, 443, this Court announced the general rule as to the evidence necessary to establish a constructive trust as follows:

"A constructive trust may be established by parol evidence, but the law, for the safety of titles, requires that the proof should be of the most satisfactory and trustworthy kind. The onus of establishing a constructive trust lies upon him who seeks its enforcement, and before a court of equity would be warranted in making a decree therefor, the evidence must be clear, unequivocal and decisive."

■ It appears that the plaintiff, Snakard, understood that to prove a confidential relation with McLaughlin, his employment had to have some connection with the things subsequently done by defendants. However, Snakard testified positively that he had hired McLaughlin to prepare himself to act as an expert witness in the trial of a Federal Court case wherein McLaughlin was not a party, and that this was the only purpose of his employment. We are forced to the conclusion that the trial court was justified in finding that the employment of McLaughlin to testify as an expert witness in the Frankfort Oil Company case was not of a confidential nature as was the positive testimony of McLaughlin when he was called as a witness by and for Snakard, who later introduced the testimony of McLaughlin by deposition, near the time he testified in person. We find that the only discrepancies in the oral testimony and deposition are minor, such as to the exact dates when certain things occurred.

The burden rested upon the plaintiff to establish that a confidential relationship existed between plaintiff and McLaughlin and the other defendants. The plaintiff failed to establish that such relationship existed and thus failed to meet the proof necessary to establish and enforce a constructive trust as to the properties involved.

■ This is a case of equitable cognizance. In Lewis v. Schafer, 163 Okl. 94, 20 P.2d 1048, it is said in the first paragraph of the syllabus as follows:

"It is a fundamental rule that equity, having once attached in a proper proceedings, will administer complete relief on all questions properly raised by the evidence, regardless of whether or not such questions or issues are specifically raised by the pleadings, as equity will not permit a mere form to conceal the real position and substantial rights of the parties. It always attempts to get at the substance of things and to ascertain, uphold, and enforce rights and duties which spring from the real relations of parties. It will not suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction."

Plaintiff complains that defendants were required to plead more than a general denial and cite Atchison, T. & S. F. Ry. Co. v. Weaver, 173 Okl. 156, 47 P.2d 104, 105. The second paragraph of the syllabus in that case announces the rule as follows:

"Under a general denial, a defendant is entitled to offer evidence of any facts which will tend to controvert what the plaintiff is bound in the first

instance to prove in order to establish his cause of action."

We have pointed out that the trial court though not requested to do so, made findings of fact and conclusions of law, and we call attention to the general rule that a general finding for one of the parties constitutes a finding of everything necessary to sustain the judgment and that unless the general finding is against the clear weight of the evidence the judgment must be affirmed. First National Bank of Bethany v. Eagan, Okl., 263 P.2d 157. In propositions two, three, four and five plaintiff contends that the findings of fact are against the clear weight of the evidence, or that the law applied by the court to the findings of fact are erroneous.

The court found that the lands acquired by McLaughlin were not the lands concerning which he was employed to testify. When we consider the other findings by the court which were disregarded by plaintiff in his second proposition, we find that no issue was made on this point, and it was not contended that the lands McLaughlin was to testify about in the Federal Court case were in the area where defendants' later acquired leases were located.

The court found as a fact that McLaughlin was employed only as an expert witness, and that the information upon which the plaintiff relied so heavily was not secret or confidential but was open and available to the public. The cases cited by plaintiff appear to be based upon a prior finding of a fiduciary relationship between the parties. The testimony of Snakard showed that the information sought from McLaughlin covered the lands in the North Wellston Field and not merely that in the Frankfort Oil Company case in which he was employed to testify.

In his third proposition plaintiff complains of the special finding of the trial court that the information obtained by McLaughlin was not secret or confidential but information open and available to the general public. The only valid issue before us is the status of McLaughlin's employment as an expert witness. This is in fact the only employment disclosed by the record. McLaughlin had been a geologist for 35 or 40 years. He was employed by Snakard to testify as an expert witness on the geological structure underlying a portion of the North Wellston Field. Should this employment deprive him of the privilege of dealing in other parts of the same field? His testimony when called to testify for Snakard was to the effect that the important information obtained by him while an employee of Snakard was not secret but was open to the public. Snakard describes the information made available to McLaughlin as an assembly of the Corporation Commission strip logs of all wells in the area; an assembly of logs from all major companies having production in the area, and described by Snakard as the only complete set of strip logs ever assembled on the North Wellston Pool.

McLaughlin testified that the information furnished by Snakard was something Snakard had dreamed up himself and was available anywhere and that the logs were put out by Riley, Incorporated. In his deposition offered by Snakard, McLaughlin said "There was nothing in his files that I wanted." Snakard had left the same information with Sohio and got it back after some six months.

Plaintiff contends that McLaughlin was his agent in acquiring the Sohio farmout. The record shows that Snakard wanted the 30 acres held by Sohio but had been unable to get it. McLaughlin knew some Sohio employees and was able to secure the acreage held by it. The property was transferred to McLaughlin and Snakard testified that it was to be his property. It appears that he later refused to proceed with McLaughlin in developing the property, but told McLaughlin to go ahead and see what he could do with it. We see no merit in plaintiff's argument as to the Sohio property.

The facts are clear that Snakard waited several months to take action against the defendants after he knew that

they had acquired title to mineral interests in the field in question. He testified that he had warned defendants not to acquire leases or develop the area, and they contend that he delayed taking any action until it appeared certain that development would yield profits. There is ample evidence that Snakard had notice of the activities of defendants, but took no action until he discovered that development would likely result in profits. We find that there is sufficient evidence to sustain the judgment of the trial court with respect to Snakard's refusal to join defendants in development when they offered him an opportunity to help them develop the leases. He failed to record several leases until he found that defendants were also leasing.

We find that the trial court was justified in his findings of fact and his application of the law. The judgment is affirmed.