C. B. (Bob) PERDUE, Administrator of the Estate of Margie Jewel Johnston Perdue, Dec'd., et al., Plaintiffs in Error,

v.

Wilmer HARTMAN, Hilda Grae Wynn, et al., Defendants in Error.

No. 40836.

Supreme Court of Oklahoma.

Nov. 16, 1965.

Horsley, Epton & Culp, Wewoka, and B. S. Null, Hartshorne, for plaintiffs in error.

Walter J. Arnote, David K. Petty, McAlester, for defendants in error, Arnote, Bratton & Allford, McAlester, of counsel.

WILLIAMS, Justice.

Marjorie Jewel Johnston Perdue died intestate at Wilburton, Latimer County, Oklahoma, February 23, 1959, leaving no children, no father nor mother, and leaving as her surviving heirs only her husband, C. B. (Bob) Perdue, her sister, Wilmer Hartman, and her niece, Hilda Grae Wynn, daughter of a brother who predeceased Mrs. Perdue. C. B. (Bob) Perdue was appointed administrator of the estate. He served in that capacity and on November 15, 1962, filed his petition to settle his final account, determine heirs and distribute the property of the estate and gave notice of the hearing thereof.

Wilmer Hartman and Hilda Grae Wynn, timely filed objections to the allowance of the final account and to the petition for distribution. They alleged that a considerable portion of the property of the estate constituted assets deceased had inherited from her father, and that protestants were entitled to a share thereof; that protestants were named co-owners with deceased, of certain United States Savings Bonds listed in the inventory of property of deceased's estate and in the final account and petition for distribution and the bonds which contained their names as co-owners were not assets of deceased's estate. These allegations were denied by the administrator. He contended that all assets listed, including the government bonds, constituted property jointly acquired during coverture. He also contended that the protesting heirs of deceased who by her had been named co-owners of the government bonds were trustees of a constructive trust for the benefit of deceased's surviving spouse.

A hearing was had on the objections and the issue so made after which the county court overruled same, allowed the administrator's final account and entered a decree of distribution in accordance therewith. On appeal to the district court the case was remanded to the county court for distribution of the estate in accordance with the findings, judgment and decree of the district court that, except for certain items, the property inventoried in, and described in the petition and decree distributing, the estate was vested in deceased by inheritance from her father, mother, and brother, and should be decreed to descend one-half to deceased's surviving husband and one-half to deceased's other heirs, Wilmer Hartman and Hilda Grae Wynn. The district court found that after receiving her inheritance, deceased had purchased government bonds in her name and in the name of Michael Paul Wynn, Jr., $1000.00, Wilmer Emery (Mrs. Hartman) $6200.00, Hilda Grae Wynn $7,200.00, and Betty Kleinegge, $200.-00, and that upon the death of Mrs. Perdue, by reason of the "or" designation of payees the respective bonds belonged to the named co-owners; that the $25 bonds belonged to the husband as surviving co-owner, that a 30-acre parcel of land sold during administration was jointly acquired by husband and wife and the administrator should be credited with the sum it brought, that the Love County mineral interests and the mineral interests and land in Latimer County were jointly acquired by husband and wife during coverture, that the homestead should be set aside to the surviving husband during his lifetime, and that the remainder should vest one-half in his heirs or devisees and one-half in the heirs of Mrs. Perdue.

As grounds for his appeal, plaintiff in error contends that the finding, judgment and decree of the trial court is contrary to law and is not supported by the evidence. His contention is, in effect, that property and assets held in deceased's name belonged to both husband and wife under a constructive or resulting trust; that for twenty years he had given deceased twenty dollars each week for deposit in her savings account, and that during the entire thirty-four years of their marriage all money he earned in excess of their necessary living costs were turned to the deceased for their savings; that although title to their properties, savings account, and United States Savings Bonds was in deceased's name, the assets were held for the mutual benefit of husband and wife.

Defendants in error say the trial court's judgment was amply supported by evidence that deceased was, in the year 1945, given $10,000 worth of U. S. Savings Bonds by her father; that when her father died she received $1000 pursuant to a bequest in his will; the further sum of $10,832 in cash, $8000 worth of U. S. Savings Bonds and $2166 proceeds from the sale of certain bank stock, in the distribution of her father's estate; that deceased received certain amounts from her share of rents from property in her father's estate, and interest on the aforementioned bonds; that deceased also received $2226.94 in the settlement of her mother's estate; that the property and assets, including the bonds, which she possessed at the time of her death constituted her separate property; that the United States Savings Bonds were purchased with money deceased received from converting older bonds to cash which was then re-invested; that defendants in error, as surviving co-owners of certain of the bonds Mrs. Perdue possessed at the time of her death, became sole owners of the bonds; that other property standing in deceased's name had been purchased by deceased with her separate funds and one-half of that should be distributed to them as heirs.

█ █ We have examined the record and find that the evidence supports the determination of the district court. While it has been held that a presumption arises that property purchased during coverture is property acquired by the joint efforts of husband and wife, such a presumption was also held, in Colvin v. Colvin, 207 Okl. 12, 246 P.2d 744, to be prima facie only and the presumption may be overcome by evidence, showing that the property involved was purchased with the deceased husband's separate funds. The evidence in the present appeal shows that the gift and inheritances Mrs. Purdue received were kept substantially intact, although their form changed. The testimony of Mr. Perdue himself is persuasive of a conclusion that deceased's inherited funds remained intact. The proof showed that Mrs. Perdue's property, as de-

termined by the district court, was recognized by Mr. Perdue as being her separate property. We think it is clear that any presumption that the bonds purchased by Mrs. Perdue constituted property acquired by joint industry during coverture was overcome.

In Barton v. Hooker, Okl., 283 P.2d 514, this Court held that upon death of the co-owner of U. S. Savings Bonds who furnished the money with which to pay for them, the bonds belonged to the surviving co-owner to the exclusion of the estate of the purchasing co-owner. See also Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180.

█ The evidence does not bear out a conclusion that a resulting or constructive trust was created as to property of Mrs. Perdue's estate. In 54 Am.Jur., Trusts, 5, at page 23, it is said: "* * *, a trust intentional in fact is an express trust; one intentional in law is a resulting trust; and one imposed irrespective of intention is a constructive trust."

In the case before us the evidence of plaintiff in error fell far short of demonstrating a trust ex maleficio, or a trust which arises contrary to intention by commission of wrong or against equity. He wholly failed to produce evidence which established fraudulent conduct by deceased in her dealings with her savings account, bonds, or property. Nor did he show that Mrs. Perdue held any of such in the capacity of trustee or in such a confidential relation as the term is used in connection with creation of a constructive trust.

In Cassidy v. Hornor, 86 Okl. 220, 208 P. 775, Jackson v. Jackson, 196 Okl. 580, 167 P.2d 51, and Luton v. Martin, Okl., 337 P.2d 442, it was held that constructive trusts are raised by equity in respect to property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by the person who holds it. In Starnes v. Barker, Okl., 340 P.2d 463, it was said that before a constructive trust will be imposed upon property, the party urging the establish-

ment of the trust must show by clear, convincing and unequivocal evidence that a constructive trust is proper. In Marshall v. Amos, Okl., 300 P.2d 990, it was held a mere preponderance of the evidence is not sufficient to establish a constructive trust but it must be established by evidence which is clear, definite, unequivocal and satisfactory, or such as to leave but one conclusion, or as to leave no reasonable doubt as to the existence of the trust.

This Court held in Wadsworth v. Courtney, Okl., 393 P.2d 530:

> "Resulting trusts are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances that the beneficial interest is not to go to or be enjoyed with the legal title. In such case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner."

> " * * * (T)he onus of establishing a resulting trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal, and decisive."

The burden in establishing either a resulting trust or a constructive trust has been repeatedly held to rest upon the party or parties seeking enforcement of the trust. Miller v. Nanny, 91 Okl. 150, 216 P. 662; Snakard v. McLaughlin, Okl., 351 P.2d 1013. The basis for the contention of plaintiff in error that deceased held her property in trust appears to be that Mrs. Perdue did not have earnings and that therefore the bonds and other property possessed by her at the time of her death were acquired with money supplied by him. The weight of the evidence shown by the record does not accord with the contention. Plaintiff in error's own testimony that he gave Mrs. Perdue money, that her automobile and bonds were regarded by him as her separate property, that he did not attempt to interfere with or write checks against her savings account constitute part of the evidence to the contrary of his contention. Our examination of the record reveals that the determination of the trial court was not contrary to the clear weight of the evidence.

Affirmed.

HALLEY, C. J., JACKSON, V. C. J., and BLACKBIRD, IRWIN, BERRY and LAVENDER, JJ., concur.